Good morning, my name is Angela Turner Ford and I represent the appellant, the plaintiff in this matter, Sean T. Ezell. We're here based on an order granting summary judgment concerning an incident that occurred on July 12, 2011 in Clay County, West Point, Mississippi. At that time it was about approximately 3.30, 3.23 in the morning and Sean Ezell came upon a grade crossing on North Division Street, he was traveling south. He describes the roadway as having an incline as he approached the grade crossing. He could see beyond the train to the next stoplight which was I guess about a block and a half away from him and he describes that he reaches a dip in the roadway as he approaches the incline and then suddenly without warning he sees the train. The district court granted summary judgment stating that the plaintiff failed to provide sufficient evidence of negligence on behalf of Kansas City Railway Company and also stated that the plaintiff failed to provide evidence sufficient of inadequate warnings. In briefing the matter for the district court, plaintiff pointed out several operating rules or the operating code of guidelines for trains and railways, one of which was the rule that states basically that trains shall not occupy crossings for more than 10 minutes if not practical to do so. Also stated in the complaint was the anti-blocking statute for the state of Mississippi which limited that time to five minutes. We do understand that perhaps that statute goes too far in trying to regulate rail transportation but certainly Kansas City Railway Company did not do anything to monitor the amount of time that it occupies a crossing. It did nothing to provide Sean Eazell or the motoring public of warning of the obstruction of the obstructed crossing. Mr. Eazell states that the crossing was the tank car occupying the crossing was black or dark in color. He does not recall the reflective markings. He does not recall anything else in particular about the crossing other than that it was blocked. Now perhaps what opposing counsel will point out during their argument is that Eazell was at home prior to this incident earlier in the day. He was off of work. He had been spending time with a friend. His child was there. They were playing video games and they had consumed some alcohol. His girlfriend, the mother of the children came in and contacted the police and he was ordered to leave the home as opposed to being arrested. Left for a few hours and at that time, that's when he decided to go and get a package of cigarettes. Approaching the crossing, he was aware that the gray crossing was present but he was unaware of the obstruction of the train itself. It would help me if you could distinguish the Elam case in terms of the district court's conclusion relating to preemption because in your brief, you don't cite the preemption section from the ICCTA. You cite it from the FRSA. So how are you? We have that precedent which is a difficult case for you. In the Elam case, the Fifth Circuit basically states that state law claims shall proceed. Shall what? Shall not proceed or state law, simple negligence. Now, in this case, there were no fuses present. All right. But so are you agreeing that Elam controls as to any per se negligence? Yes, Your Honor. I will concede that point in terms of the five minutes but certainly, I don't think that Kansas City Southern Railway Company should be allowed to occupy crossings for an unlimited amount of time without any regard for the motoring public. The event recorder data in this case states that the train had occupied the crossing for about 24 minutes and given the type of crossing that's involved here, that is a hazard. The state of Mississippi case law recognizes that there is an occupied crossing doctrine and . . . But still on Elam, do you know the case pretty well? No. Remember how the Court drops a footnote saying even a state law case, if it's built on blocking, is likely preempted? Is that a fair description of that footnote? It is a fair description. Okay. And when I looked at your expert, Scott, Jim Scott . . . Yes, Your Honor. I think he's the same expert that testified in Elam. He is. He was. It didn't look like he made any causal connection to this tragedy other than the blocking. He's asked multiple times, I mean, put aside possible driver error and you're good to acknowledge that aspect of this case, but did your expert testimony point to him saying that anything was responsible other than the extended block time? During deposition, he stated that they could have put down fuses to further illuminate the crossing, but in terms of his report, he did relate it to the blocking and a safe . . . What's your best case on, if we do, on the occupied crossing rule? What's your best case that shows that the circumstances he looked at here and the photos and all that are still unusually hazardous? I would say our best case is King v. Illinois Central Railroad. The citation for that is 337 F. 3rd 550 at page 553. That's a 2003 Fifth Circuit . . . And that's where the court found that it was unusually hazardous, so the Mississippi occupied crossing rule didn't apply? It found that there could be exceptions. There could be, okay. And so what feature of this crossing would fit into that exception? I would say that the fact that Ezell is approaching the crossing and there is a slope, there is an incline, the defendant's opposing expert basically concedes that Ezell could have seen this traffic light, as he claimed, underneath the rail car as he is approaching the crossing. So the elevation of the crossing itself, the dark tank car, and the fact that he can see beyond the train as he's approaching, and the train is sitting there, he does not have the visual cue of movement of the wheels going back and forth . . . But you didn't dispute the signs, right? No, Your Honor. We did not dispute the signs. He was aware of the crossing. And the women that show up immediately confirm there's a street light there and it was on? Or is that wrong on my part? There is one, I think, that would have been out of his view on the backside of the crossing, but there was one ahead. But it's, I guess, the misconception of him approaching and can see beyond the train. Yeah. Go ahead. It's what is specific to this particular incident. And in King, it states the Mississippi courts make an exception where a vehicle approaches a crossing on a street with a steep and varied incline so that the vehicle's headlights do not strike the train's cars, and that's what Ezell encountered here. That testimony is undisputed, that he could see beyond the train and he did not have the visual cues of movement. Now, another . . . the district court refers to the 5 percent grade, I guess, or slope of the crossing, but I think that fact is misapplied or that interpretation is misapplied in that the expert's testimony on that particular issue is limited to the rails and just outside of the rails. It does not take into account this incline or slope that Ezell encountered as he approached the crossing. So, to refer to the crossing or the incline as slight, I believe is a mischaracterization of the evidence. So, what do you . . . we had the slope or the dip. What other hazardous things were there there that made this crossing peculiar or dangerous? The fact that it's elevated and that he can see beyond it. I would think that just the occupied crossing doctrine is the train is there and you see it, but what happens if you see beyond it, such that you cannot appreciate the danger of the train, and that's what Ezell encountered here. Now, do you think the conditions here are similar to the situation, the dangerous condition that you had in the King case? I would say, yes, Your Honor, or at least similar. I think in King, wasn't there a sharp curve or there was something blocking the obstruction to the place? I mean, we don't have that here. Do we have a sharp curve here like we did in King? I'd say we have an incline here. It's not a flat road surface. Okay. But it's certainly alluded to in the King case. Another point that I'd like to raise relative to the district court's order is it appears as though the district court is saying that the only remedy that Ezell would have had would have been to have filed his lawsuit before the Surface Transportation Board, and with that, we dispute that particular point. We believe that case law and statute allows Ezell to file his claim. We would say first in state court, but certainly, he should have been allowed to proceed in federal court as well, as opposed to just being directed to the Surface Transportation Board for redress of his injury, and that is my argument. Thank you, Your Honor. Thank you. Mr. Ross. Thank you, Your Honor. May it please the Court, I'm Charlie Ross. I represent the Kansas City Southern Railway Company. There were questions asked about Elam. This case is indistinguishable from England. Same expert, same underlying facts, train over a crossing while the crew was engaged with using that train for switching operations. This Court in Elam said that that falls squarely within the ICCTA. It's economic regulation, it's regulation directing the railroad, how they move their train, scheduling. But the Court did sort of muddy the waters a little bit about, say, a failure to warn negligence. It didn't decide that. In fact, it remanded back. So it doesn't... There were two claims at issue in Elam. One was the blocking the crossing claim. The Court came down solidly on that and said that it was preempted by the ICCTA, the anti-blocking statute, and the common law negligence claim in footnote 13 said that that was also preempted based upon crossing alone. Then they went to the general negligence claim as to warning, and in the general negligence claim as to warning, they said that that was not preempted, and that's correct, and they said that there was an issue of fact as to whether summary judgment was appropriate, so they remanded it on that. This is a different case. This is a different case in this regard. And then, but just to carry out the logic of that, because it's a little bit, it's not exactly clear to me the line they're drawing, but therefore a failure to warn type State negligence argument, simple negligence, could relate more to safety and therefore fit into the FRSA? Yes. Okay. Okay. So I guess that's the hardest part of this case for me, for you, in your, from. Okay. As far as the warning claim, Elam and Freiberg make it clear that a negligence per se claim or a common law negligence claim based solely upon blocking the statute for a length of time that the plaintiff said was too long is preempted by the ICCTA. Then you get to the question, did the railroad have a duty to provide additional warning at that crossing that was blocked? And the district judge relied upon the occupied crossing doctrine, which is dispositive in this case. The occupied crossing case, crossing does have an exception for extraordinary circumstances. Plaintiff counsel said that the Keene case is her best case. This court, in the Keene case, it was not a curve in the road. It was sort of a, it was mainly a darkness of night. And this court said under Mississippi law, darkness of light or the fact that the crossing is, I mean, the car on the crossing is dark is not sufficient. If you look at the Owen case. Is not sufficient. Is not. Is not sufficient to be unusually hazardous? That's correct. Okay. In the Owen case, the plaintiff in that case testified very similar to the plaintiff in this case that there was a dip in the road. Plaintiff here says there was a dip in the road. And as a result, his headlights went underneath the car and he could see the red lights a block or two beyond the car. He did not testify that his headlights did not illuminate the car. We had undisputed expert testimony that the approach to the crossing was only about 5% and that the headlights would have, if he had normal headlights and he was driving reasonably, the headlights would illuminate the car. In the Owen case, there was very similar testimony to what the plaintiff relies upon here. And in the Owen case. I'm embarrassed to say, when you say Owen, could you give me the site? I know it was in the briefs. Yes. That's not the Boyd case, is it? No. It's Owen v. International Paper Company, 528 F. 2nd, 606 Fifth Circuit. And in the Owen case, it says, we will assume for the purpose of this opinion that if the evidence of the appellants would have justified a finding that there was a steep hill descending from the east to a point near the crossing where the road became flat or nearly flat so that the lights of a vehicle approaching the crossing from the east would not reveal the presence of the boxcar until the vehicle was within 30 to 100 feet from the crossing, then the appellants would have brought their case within the exception to the rule as stated above. If the oral testimony of witnesses was all that was before the court, it may be that the appellants would have made out a case that would stand a motion for a directed verdict. But even under the rule that the evidence must be viewed in the light most favorable to the appellants, as already stated, appellants' proof did not make a case for the jury for the reason that photographs and engineer's plats shown by the appellants reveal the physical facts. These photographs and plats and the testimony of the appellants' engineer show there is no steep hill as indicated by the oral testimony. And that's the situation here. There is a little dip. It's about five degrees. The fact that there's a little dip does not mean it's extremely dangerous, extraordinary. And there's undisputed testimony that this road met the standard, the engineering standards in all aspects. I don't want to quibble about words, but when you say extremely dangerous or extraordinary, those aren't the words the law uses, right? It's unusually hazardous. You're just saying they're roughly equivalent. Yes, Your Honor. Okay. Yes, Your Honor. Now, there's one other case that's very significant. It's the Brown case, Brown v. Illinois Central, which was decided, I think, in 2012. It's the most recent Fifth Circuit case on the Occupied Crossing Doctrine in Mississippi. And Brown makes it clear, however, even supposing, it's a 2013 case, this is 705 F. 3rd, 531. It says, even supposing Long's ruminations on the, that was Plaintiff's expert, on the crossing's narrow pavement, skewed angle, rough surface, and steep incline are admissible. The Mississippi Supreme Court rarely clarified, recently clarified that such factors are irrelevant to a company's tort duties at public crossings. Reasoning railroad companies do not have any control over the grade of the crossing nor any responsibility to change it. Likewise, they are not responsible for paving the roads leading to the crossing. So, Brown recognizes that the Mississippi Supreme Court has recognized that unusual circumstances so as to take something out of the Occupied Crossing Doctrine cannot be based upon things beyond the railroad's control, like a slight dip in the road approaching the crossing. Now, can you compare the facts in the King case compared to the facts in this case? Why, in King, were the circumstances extraordinary or whatever . . . No, they were not extraordinary. They were not, yeah, but . . . they were not, yeah, that's right, but can you compare the facts in each of those cases, or of our case and the King case? Is there in the King case, I guess, an explanation of what might fit the situation where there is a . . . That's the thing about the King case. It doesn't say there was an incline. It doesn't say there was a curve. It just says, King, the plaintiff, argues he should be excused from the Occupied Crossing rule because the accident happened at night. The Mississippi case law does not support King's argument. So evidently, and that's the only thing I gleaned from the opinion, evidently he was just saying it's dark and that is not . . . and they say darkness of night is not a peculiar environment or hazardous condition. It would still be relevant in aggregate, though, right? What's that? Darkness, curve. Obviously, the railroad doesn't control the curvature, but those factors come into whether or not it's an unusually hazardous crossing. I think under . . . I think it's the Travis case, the Mississippi case, which this Court in Brown relies upon, that curves and dips in the road at one point in time could take something out of the Occupied Crossing doctrine, but the law has changed in Mississippi since the Travis case, which this Court in Brown relied upon. Really? So give me an example of what would be an unusual hazard today if the law's changed. It can include darkness, can include incline, can include curve. So what would be unusual hazardous? If you suddenly . . . and this is hypothetical. If you suddenly came upon a crossing and there were a row of trees that completely blocked your sight and the railroad did not provide additional warning so that you could see the train approaching, you would be aware of the train approaching despite the trees. The railroad does have control of vegetation on its crossing, and so if there was a car over the crossing, but as approaching, your view of the car was obscured by vegetation or something such as that, that might qualify, but it is a very limited . . . In that situation, the train's approaching and you're looking down the tracks and the vegetation's blocking your view of the tracks. I misspoke, Your Honor. If you had a car over the . . . Occupied Crossing doctrine applies to moving cars and stationary cars. If you had cars over the crossing and the approach was such that you could not see those cars over the crossing because of vegetation on the railroad right away, that might be . . . So it's only hazards that the railroad controls? That's how you understand Mississippi law? That's what the case law in Mississippi says, and that's what this Court . . . And not what this Court . . . Give me the best site for that. I didn't understand that. What's the best Mississippi law? I didn't think the Boyd decision, for example, said that, but you're telling me the laws change? Yes. So what's the best case that acknowledges the change that unusually hazardous only means factors that the railroad controls? This is Brown v. Illinois Central Railroad Company, 705 F3rd . . . No, I'm asking for a Mississippi case that says that. I was going to . . . Okay. 705 F3rd, 531. It's an occupied crossing case, and . . . I know, but I'm sorry. I'm interrupting because that's an F3rd site, so that's a Federal case. What's the best Mississippi case that says our law's changed, night can't be involved, turns can't be involved, inclines not involved, only thing that the railroad controls could ever be an exception? Illinois Central Gulf Railroad Company v. Travis . . . Okay. 106 Southern 3rd, 320. Okay. Decided in 2012. But let me point out, Your Honor, beyond the occupied crossing, the occupied . . . if there's an exception to the occupied crossing doctrine, and they're very limited, but if there's an additional warnings under state law. But then you have Federal law, and this crossing, Federal funds were used for the passive warning devices. I mean, for the warning devices that were there. And under the U.S. Supreme Court decision in Shanklin, under this Court's decision in Heslin, under Court decision . . . Shanklin has established law that this Court has followed and other circuits have followed. That means any claim that there should be additional warning at the crossing is preempted as a matter of Federal law. So you read Shanklin to say that if any Federal monies are expended with any warning sign, at that point, all failure to warn are preempted? That's how you read Shanklin? Yes, Your Honor. And it even goes . . . And what's the best circuit decision post-Shanklin that said that complete preemption exists? Do you have any court that's interpreted Shanklin that broadly? Yes, Your Honor. Give me just a second. This is one of your three alternative arguments. You're first defending the Court's application of the Occupy, but then you're saying we asserted three alternative. They never answered those, right? But this one is the one of three, and would you say this is the best of your three alternative arguments to affirm? I think all three of them would be good. I know. Okay. Lawyers always say that. It depends on . . . This wasn't . . . The District Court didn't reach this, and there was no adversary treatment. So if we had to move to these alternative arguments, would the proper relief be that we would remand? Yes. Okay. If you look at . . . I'll refer you to page 35 of our brief. Page 34, we cite Shanklin. And then page 35, we cite Heslin v. CSX Transportation, Inc., 396 F. 3rd, 632. What circuit is that? Fifth Circuit. Fifth, okay. We cite Hester v. CSC Transportation, Inc., 61 F. 3rd, 382. Okay. You've given us the cites, and then that's the broad interpretation of Shanklin. Okay. And for the first time on appeal, she mentions fusees. She did not . . . I mean, Plaintiff did not mention fusees or flares at the District Court level in opposition to the summary judgment. So that argument's waived. But regardless, if you look at footnote 19 in our brief, the preemption . . . I'm sorry, Your Honor. The sweep of the preemption arguments is broad. I mean, I know we're saying these things affect the economic regulations, and therefore, it's a nationwide concern. But they're pretty safety-related as well. Well . . . I mean, that's . . . I know that decision . . . that issue may have been decided by us, and we have no flexibility. But the ELAM footnotes just leaves a little bit of unclarity in my mind. Well . . . Why then have these state laws that say five minutes and the railroads rules that say, if practical, no more than ten minutes? For the convenience of the public, for emergency vehicles. Right. Or we point out in footnote in our brief, Mr. ELAM . . . I mean, Mr. Ezel, he turned onto Division Street going toward the crossing. It was only 30 to 40 seconds to get there. How long the train had actually been over the crossing is irrelevant from a safety standpoint as to Mr. ELAM. But it might be relevant to an ambulance or to police departments. It might have been relevant in Freiburg, where the blocking of the crossing caused the business to lose business. But even in Freiburg, where it might have caused economic loss, losing business, this Court clearly said the negligence per se claim under the Texas Anti-Blocking Statute, which is virtually identical to Mississippi, and the common law negligence claims were also barred. And to the extent the operating rule of KCS is relevant at all, one, it's not required by federal regs. It's a KCS rule. To the extent it's relevant, it's only evidence of a common law negligence blocking claim, which is itself preemptive. Going back to the warning, we also point out, in addition to the occupied crossing claim and the FRSA preemption claim, we also point out that recent Mississippi laws, Mississippi Code Section 65.1.175, as interpreted by the Jobes decision, which is cited in our brief, says that warnings at the crossing, as far as the duty under state law, is the responsibility of the Mississippi Department of Transportation, not the railroads. I will refer you to ‑‑ There was a crossbar sign here. Was it one or two or how many signs? There was a crossbar sign. The only duty under Mississippi law, affirmative duty under Mississippi law for the railroad, is to ensure that the crossbar is installed. It was there, and it was reflectorized, and it was in good shape. There were other warnings there also. There was a reflectorized yield sign. There was an advance warning sign, and the plaintiff testified he was aware of the crossing, and he testified that he knew it was an active crossing. I know on summary judgment, comparative negligence is not an issue, but going back to the occupied crossing, the doctrine says that a train over the crossing is all the warning that a reasonable motorist traveling at a correct speed with headlights that work properly is entitled to. I just think as a matter of law, somebody's .21 blood alcohol level is not a reasonable motorist. On the joke ‑‑ Was the train parked there stationary? Do we know? It is not exactly clear from the record. Plaintiff claims that it was 20 minutes, but his expert interpreted the data wrong, giving it to an issue of fact there, I guess. Our best estimate, Judge, is 10 or 12 minutes. It had definitely been there longer than five minutes, according to the record. But once again, and I'm trying to be as honest as I can, that is irrelevant from a matter of federal law. And 611.175 starts on page 36 of our brief. The jurisdiction of Mississippi Department of Transportation shall be exclusive with respect to public roadway, railroad crossings, either at grade or otherwise, and Job interprets that, that the state legislature has relegated the duty to warn motorists at underpasses, which also apply to grade crossings to MDOT. That's the Mississippi Department of Transportation. And the final point I want to make in a footnote, we point out that the FRSA preemption goes not only to what we're used to, the flashing lights and the bars coming down, but it also goes to flagman and manual devices. Manual devices would be fuses or flares. Judge, I'll be happy to answer further questions, but I think that covers my argument. Thank you. Ms. Ford? Thank you, Your Honor. In summation, I would just say that all things taken together, this was a peculiar crossing. There was fog, according to the testimony. They said that there was case law in Mississippi that said that if this peculiar situation is not under the control of the railroad, that they're not liable for it, such as a dip or the darkness, that that's something out of their control and therefore they're not responsible or liable for those conditions. I'm not aware of that, Your Honor. I'm not. Looking at the information that I have provided in my brief, it states from King that there was a dip in the road. But are you familiar with the Travis case that he cites for that proposition? I am not. A dip in the road, inclines in the roadway, and again, as I stated before, all of these things taken together, uncontradicted by the plaintiff or uncontradicted as to his testimony, makes this a peculiar situation. I have one fact question. Was it undisputed that the car in particular that's blocking had reflectorized numbers on it, or is that a disputed issue of fact? I would say that the—I'm not going to say that it did not have markings. The witness that approached the crossing from the opposite side said that she didn't see them. Okay. From the opposite side. From the opposite side, and the plaintiff who was injured says that he saw it at the last minute. Not the markings, but the car itself. The black car. Okay. So I'm not going to say that it did not have the reflective markings, but certainly if they're going to occupy the crossing as long as they did, and these general code of operating rules do relate to safety, and if they're going to disregard those things, then there should be some liability. And to sit there for 24 minutes, no visual cues of movement, approaching motorists can see past the train, there should be some responsibility owed by Kansas City Southern Railway Company. Do you disagree with their characterization of the blocking statute as being for the convenience of the public, that is cars that don't want to wait forever to cross the railroad track, as opposed to a safety measure? I think it's a safety measure. Based on what? Well, I think opposing counsel said that once the plaintiff turned onto Division Street, he would have gotten there in 30 seconds. I'm not sure that's quite accurate. It's a long stretch of roadway. And a train moving or doing anything is going to attract someone's attention. But if it's just sitting there and you can see beyond it, that is a safety issue. Well, no doubt it could result in this incident if it did here. But at minute four, even under the anti-blocking statute, they can be there for four minutes, and the same exact accident that happened here could have happened at minute four. So it's not preventing cars from hitting occupied trains. I mean, the fact that it's a time limit does seem to support their view that it's all about keeping traffic moving and, like, emergency vehicles, not just regular traffic. Do you know any case? There's a bunch of these in various states. Do you know any case that says it's designed primarily as a safety measure to prevent train accidents with trains? I have not seen that, that it's designed strictly as a safety measure. But what I would like to add is at the end, at the preface of those rules, it says that these rules here in government operations of railroads listed and must be complied with by all employees, regardless of gender, and they supersede operation. So plaintiff contained persists and states that Kansas City Southern Railway is liable to that and would request that this matter be remanded to state court based on the issue of warning. Thank you, Ms. Ford. Mr. Ross.